UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

               Plaintiff,          Hon. Nancy G. Edmunds
                                         Case No. 10-CR-20005

    v.

D-1 UMAR FAROUK ABDULMUTALLAB,

               Defendant.
_____/


MOTION HEARING AND SENTENCING
before the Honorable Nancy G. Edmunds
Detroit, Michigan

FEBRUARY 16, 2012


APPEARANCES:

For the Government:  Mr. Jonathan Tukel, Esq.
                      Ms. Cathleen M. Corken, Esq.
                      Mr. Michael C. Martin, Esq.
                      United States Attorney's Office
                      211 W. Fort Street, Suite 2001
                      Detroit, MI 48226

For the Defendant:  Mr. Umar Farouk Abdulmutallab, In Pro Per

Standby Counsel:    Mr. Anthony T. Chambers, Esq.
                      ANTHONY T. CHAMBERS LAW OFFICE
                      535 Griswold, Suite 1330
                      Detroit, MI 48226


-  -  -

To obtain a copy of this official transcript, contact:
Suzanne Jacques, Official Federal Court Reporter
email: jacques@transcriptorders.com

# I N D E X

| Proceeding | Page |
|---|---|
| MOTION TO PERMIT DEMONSTRATIVE EXPLOSIVE EVIDENCE | |
| Argument by Mr. Martin | 4 |
| Response by Mr. Chambers | 6 |
| | |
| MOTION TO HOLD MANDATORY LIFE STATUTE UNCONSTITUTIONAL | |
| Argument by Mr. Chambers | 9 |
| Response by Mr. Tukel | 9 |
| Rebuttal by Mr. Chambers | 10 |
| | |
| MOTION TO STRIKE REPORT OF SIMON PERRY | |
| Argument by Mr. Chambers | 13 |
| Response by Mr. Tukel | 13 |
| Rebuttal by Mr. Chambers | 15 |
| Further Response by Mr. Tukel | 19 |
| | |
| SENTENCING HEARING | |
| Victim Impact Statements | 21 |
| Elocution | 39 |
| Sentence by the Court | 47 |
| | |
| CERTIFICATE OF COURT REPORTER | 58 |

2/16/2012 Sentencing Hearing

1    informed of the deadline.  Only these were submitted.

2              I'd like to move now to the portion of the

3    sentencing hearing that we call elocution where counsel and the

4    defendant himself are able to make statements, and I'll begin,

5    Mr. Chambers, by asking if you would like to make a statement

6    on behalf of Mr. Abdulmutallab.

7              MR. CHAMBERS:  I believe Mr. Abdulmutallab is going

8    to make a statement himself.

9              THE COURT:  All right.  I was clearly going to

10   invite him to do it himself.  Do you have an additional

11   statement, or no?

12             MR. CHAMBERS:  I do not.

13             THE COURT:  All right.  Mr. Abdulmutallab.

14                                          (2:31 p.m.)

15             THE DEFENDANT:  In the name of Allah, the most

16   merciful, the most gracious, all praise to Allah and peace and

17   blessings to be upon his messenger, Muhammad, the final and

18   last messenger to mankind.

19             As for what follows, in quick response to some of

20   the things that have been said, to Lamare Mason, I say my life

21   and the lives of Muslims has also changed due to the U.S.

22   attacks on Muslim civilians.  And to Miss Chopra, I say Shaykh

23   Osama Bin Laden and Shaykh Anwar Al-Awlaki are alive and shall

24   be victorious by God's grace, and Shaykh Osama Bin Laden and

25   Anwar Al-Awlaki are rightly guided and God knows best doers are

USA -v- Abdulmutallab    Case No. 10-CR-20005

1    guided.

2         God said it is those who do not -- it is those --

3    God said those who do not rule by what he has revealed are the

4    oppressors, and whatever God decrees for a Muslim is not a

5    failure.

6         And then to Mr. Maranga, I say God is a merciful,

7    his mercy is borne in his anger and God is also severe in

8    punishment.  This is why there is heaven and hell even in

9    Christianity.  The mujahedeen are proud to kill in the name of

10   God, and that is exactly what God told us to do in the Koran.

11        And to Kurt Haskell, every Muslim testifies that

12   there is no God but Allah, and that Muhammad, peace be upon

13   him, is his final messenger, and I testify to that, and I am

14   not a U.S. government patty(sic).

15        The situation of the one who believes in Allah is

16   always good.  Whatever happens to him is good for him.  It is

17   always a win-win situation, and this is the situation only for

18   the believer in Allah.  This is what Muhammad, peace be upon

19   him, teaches us.

20        Today is a day of victory, and God is great, and

21   indeed God said you'll find the harshest people to those who

22   believe in Allah to be the jews, and indeed, Simon Perry, who

23   wanted to speak today fits that description very well.  There

24   are devils among spirits and men, and whoever wants to see one

25   can look at Simon Perry, along with his partners in crime, the

1   FBI agents and, of course, the U.S. Attorneys, Michael Martin,

2   Jonathan Tukel and Cathleen Corken.

3            They intentionally misquote and mispresent(sic)

4   facts with false statements in order to achieve their evil

5   goals.  The mujahedeen, by God's permission, shall continue

6   unharmed and unopposed by the adversaries until the jews are

7   driven out of Palestine and the righteous servants of Allah

8   inherit the world with former great Assyria that includes

9   Palestine as the capital of the Muslim world.

10           This, the messenger of God, Muhammad, peace be upon

11   him, promised us, and he speaks the truth.  And our final call

12   is all praise to Allah, peace be on those who follow guidance.

13           MR. CHAMBERS:  I would just indicate for the

14   record, I did not give an elocution because of

15   Mr. Abdulmutallab's wishes.

16           THE COURT:  Thank you, Mr. Chambers.  Thank you

17   Mr. Abdulmutallab.  Ms. Corken.

18                                        (2:35 p.m.)

19           MS. CORKEN:  Yes, Your Honor, thank you.

20           Your Honor, as the Court's aware, the government is

21   asking that the Court impose the maximum sentence on the

22   nonmandatory counts, and that is a sentence that's called for

23   by the sentencing guidelines, and it is the sentence that is

24   fully justified by the seriousness of the defendant's conduct

25   in this case.

Case No. 1:17-cv-02493-RM-KMT  Document 79-2  filed 05/11/18  USDC Colorado  pg 6 of
22
2:10-cr-20005-NGE-DAS  Doc # 139  Filed 04/11/12  Pg 42 of 58  Pg ID 1246    42
2/16/2012 Sentencing Hearing

 1          The defendant is someone who attempted to commit

 2    mass murder.  On Christmas day of 2009, he boarded Flight 253

 3    with a cold blooded, calculated plan to destroy Flight 253 and

 4    to murder all 259 people aboard it.  He had hidden in his

 5    underwear a device that was designed to cause massive damage to

 6    accomplish that plan, and on the descendent to Detroit, he

 7    depressed the syringe of that device, fully intending that

 8    device to bring the plane down over U.S. soil, as he later told

 9    law enforcement officers.

10          The video that we plan to play for you will show

11    you just what the defendant's explosive device was designed to

12    do and intended to do.  The first clip is in real time, Your

13    Honor.

14          (Videotape played.)

15          THE DEFENDANT:  Allahu Akbar.

16          MS. CORKEN:  This is slow motion, Your Honor.

17          THE DEFENDANT:  Allahu Akbar.

18          MS. CORKEN:  Your Honor, this is what defendant

19    referred to during the plea as a blessed weapon.  I'd like to

20    offer the Court for its inspection one of the shards from the

21    aluminum that the device was sitting on in the explosive

22    demonstration.

23          THE DEFENDANT:  Allahu Akbar.

24          THE COURT:  I'm sorry, Mr. Chambers, do you know

25    what it is that the defendant is saying?

              USA -v- Abdulmutallab    Case No. 10-CR-20005

Case No. 1:17-cv-02493-RM-KMT Document 79-2 filed 05/11/18 USDC Colorado pg 7 of
22
2:10-cr-20005-NGE-DAS Doc # 139 Filed 04/11/12 Pg 43 of 58 Pg ID 1247    43
2/16/2012 Sentencing Hearing

1          MS. CORKEN:  God is great, Your Honor.

2          THE COURT:  Thank you.

3          MS. CORKEN:  Your Honor, I offer that shard from

4    the aluminum to illustrate to the Court the damage that could

5    have been caused by the device that the defendant was wearing.

6          The defendant claims in its recent filing with the

7    Court that because the device did not function fully and no

8    death or serious bodily injury occurred in this case that he

9    should be treated more leniently.

10          The defendant did everything possible that he could

11    to bring about the destruction of Flight 253 and the death of

12    its passengers.  His plan failed not because of something that

13    he did, not because of something that he failed to do.  His

14    plan failed because of a technical glitch in the operation of

15    the device, a glitch that the defendant was completely unaware

16    of.

17          It was sheer fortuity that numerous deaths were

18    averted in this case.  It wasn't the defendant's doing and he

19    shouldn't be given credit for that.  The defendant also argued

20    in his recent filing that there was not a single victim in this

21    case.  The passengers here and in interviews with us have

22    described the trauma, the panic and the terror that they

23    suffered on that plane when the fire erupted in the cabin.

24          Lamare Mason could tell you, I'm sure, or a pilot

25    certainly would, that fire in an airplane is about the most

Case No. 1:17-cv-02493-RM-KMT  Document 79-2  filed 05/11/18  USDC Colorado  pg 8 of
22
2:10-cr-20005-NGE-DAS  Doc # 139  Filed 04/11/12  Pg 44 of 58  Pg ID 1248        44
2/16/2012 Sentencing Hearing

1    dangerous thing that you can have.  If it's not brought under

2    control, you're gone.  There are not fire engines that are

3    going to come to the rescue thousands of feet in the air.

4              The passengers have told us, many have, that they

5    thought they were going to die, that they thought that the

6    children that were with them were going to die, and many

7    passengers, as the Court knows, still suffer from the trauma of

8    the incident, as the victim impact statements certainly attest.

9              In addition to the trauma that passengers and crew

10   suffered, the defendant's conduct, of course, had a broader

11   impact.  It was intended to.  And the American public at large

12   was victimized by the defendant's conduct.  There were also, as

13   the Court knows, enormous costs associated with augmented

14   security measures that were put in place after the defendant's

15   attacks.  So there were certainly actual victims of the

16   defendant's conduct, there was certainly actual harm caused by

17   the defendant's conduct.

18             The defendant has also argued for a sentence below

19   the guideline range based on lack of criminal record.  His

20   conduct is so serious, so egregious that the maximum sentence

21   is warranted regardless of his lack of criminal record, and

22   that's certainly the view that is expressed through the

23   sentencing guidelines.  For terrorism offenses, defendants are

24   treated in the highest criminal history category, regardless of

25   their actual criminal history.

Case No. 1:17-cv-02493-RM-KMT   Document 79-2   filed 05/11/18   USDC Colorado   pg 9 of
22
2:10-cr-20005-NGE-DAS   Doc # 139   Filed 04/11/12   Pg 45 of 58   Pg ID 1249       45
2/16/2012 Sentencing Hearing

1              In addition, the base offense level for the

2      defendant's offenses in this case is so high, it's at 43, that

3      his sentence would be life regardless of whether it's category

4      I or it's category VI.  So the sentencing guidelines reflect

5      what we would say is the sound view, that when it comes to

6      terrorism, it really doesn't matter if you've been around the

7      criminal block a previous time.

8              The defendant also in his recent filing asked for a

9      sentence below the guideline range, and leniency, claiming that

10     he can be rehabilitated.  I will just ask the Court to keep in

11     mind the defendant's statements here today, the defendant's

12     statements at the time of his plea.  It's been two years since

13     the offense, and I think it's clear from those statements that

14     there is very little prospect of rehabilitation in this case.

15     Rehabilitation requires an acknowledgment of wrongdoing, some

16     expression of remorse, some feeling of regret.  There has been

17     no expression of regret, remorse, an acknowledgment of

18     wrongdoing on the part of defendant.

19             As he stated today, he and those who think alike,

20     think similarly to the defendant are proud to kill in the name

21     of God.  So there certainly is no basis for a more lenient

22     sentence based on the defendant's potential rehabilitative --

23     potential for rehabilitation.  We would say that there is no

24     such potential.  Quite the opposite, in fact, Your Honor, given

25     the defendant's statements both in his plea and his statements

Case No. 1:17-cv-02493-RM-KMT   Document 79-2   filed 05/11/18   USDC Colorado   pg 10 of 22
2:10-cr-20005-NGE-DAS   Doc # 139   Filed 04/11/12   Pg 46 of 58   Pg ID 1250      46
2/16/2012 Sentencing Hearing

1   today.

2             The sentence needs to incapacitate him for as long

3   as possible so he no longer or never will have the opportunity

4   to harm anyone.  In addition, there is the goal of general

5   deterrence.  It may be unlikely that the Court could deter a

6   committed suicide bomber, but the Court could deter somebody

7   who is headed down that path.  Terrorists, including suicide

8   bombers, are not born that way.  Radicalization takes time and

9   it's a process.

10            The Court should send a message to those who have

11  started down that path or who are considering terroristic acts

12  down the road that if they do commit such an act, they will

13  feel the full weight of the law and they will receive the

14  maximum possible punishment.

15            Your Honor, the maximum sentence on all counts here

16  is also consistent with sentences in other cases.  We cited a

17  number of those cases in our sentencing memo.  I'm certainly

18  not going to recite them here.  I'd just remind the Court of

19  the Richard Reid case, which is the closest factually to this

20  case, where there were three nonmandatory life sentences, and

21  the defendant received the maximum on other discretionary

22  counts.

23            Same thing is true in the Shahzad case, the Times

24  Square bomber case, where the defendant there received

25  nonmandatory life sentences and the maximum sentences on other

Case No. 1:17-cv-02493-RM-KMT   Document 79-2   filed 05/11/18   USDC Colorado   pg 11 of 22
2:10-cr-20005-NGE-DAS   Doc # 139   Filed 04/11/12   Pg 47 of 58   Pg ID 1251        47
2/16/2012 Sentencing Hearing

 1  discretionary counts.  I'd note that he doesn't have a criminal

 2  record, and in neither the Richard Reid case nor the Shahzad

 3  case was there serious bodily injury or death.

 4       A below-the-maximum sentence in this case, Your

 5  Honor, sends the message that terrorism is excused, at least in

 6  some measure, be it by virtue of a defendant's age, his lack of

 7  criminal record, or because of a mechanical failure in an

 8  explosive.

 9       It's important for the Court's sentence to express

10  just the opposite message, that there is no justification, that

11  there is no rationale, that there is no excuse for blowing up a

12  plane and for trying to kill hundreds of innocent people.

13       We ask the Court to impose the maximum sentence on

14  each count as called for by the sentencing guidelines.  It

15  fairly punishes the defendant, it reflects the seriousness of

16  the offense, and then insures that he will never again have a

17  chance to harm Americans in the future.

18                                              (2:48 p.m.)

19       THE COURT:  Thank you, Ms. Corken.

20       Well, as a preliminary matter, I'd like to just

21  review the eight offenses to which the defendant has pled

22  guilty in this matter.

23       Count 1, conspiracy to commit an act of terrorism

24  transcending national boundaries; Count 2, possession of a

25  firearm or destructive device in furtherance of a crime of

Case No. 1:17-cv-02493-RM-KMT   Document 79-2   filed 05/11/18   USDC Colorado   pg 12 of
22
2:10-cr-20005-NGE-DAS   Doc # 139   Filed 04/11/12   Pg 48 of 58   Pg ID 1252      48
2/16/2012 Sentencing Hearing

1   violence; Count 3, attempted murder within the special aircraft

2   jurisdiction of the United States; Count 4, use and carrying of

3   a firearm or destructive device during and in relation to a

4   crime of violence; Count 5, willfully placing a destructive

5   device in, upon and in proximity to a civil aircraft which was

6   used and operated in interstate, overseas and foreign air

7   commerce which was likely to have endangered the safety of such

8   aircraft; Count 6, possession of a firearm or destructive

9   device in furtherance of a crime of violence; Count 7,

10   attempted use of a weapon of mass destruction, and Count 8,

11   willful attempt to destroy and wreck a civil aircraft.

12          On the statutes at issue in each count, defendant

13   faces up to 20 years of imprisonment on Counts 3, 5, and 8

14   which may run concurrent to each other, up to life imprisonment

15   on Count 7, also concurrent to the other three counts, that is,

16   Counts 3, 5 and 8, a mandatory consecutive sentence of 30 years

17   on Count 2, mandatory consecutive sentences on Counts 1, 4, and

18   6.  The sentence on Count 1 is up to life in prison, and Counts

19   4 and 6 are mandatory consecutive life in prison sentences.

20          With respect to the guidelines, in the present

21   case, the sentencing guidelines in addition to the statutes

22   also provide for life sentences.  As I just noted, Counts 4 and

23   6 carry statutorily mandated life sentences, consecutive life

24   sentences.  Counts 1, 3, 5, 7 and 8 all are subject to the

25   terrorism enhancement of the United States Sentencing

USA -v- Abdulmutallab     Case No. 10-CR-20005

Case No. 1:17-cv-02493-RM-KMT   Document 79-2   filed 05/11/18   USDC Colorado   pg 13 of 22
2:10-cr-20005-NGE-DAS   Doc # 139   Filed 04/11/12   Pg 49 of 58   Pg ID 1253        49
2/16/2012 Sentencing Hearing

1   Guidelines Section 3A1.4 which adds 12 levels to each of the

2   base offenses and also places defendant in criminal history

3   category VI.  As a result, each of the nonmandatory counts has

4   an adjusted offense level above level 43, which is the highest

5   level contained in the guidelines.

6           An offense level of 43 calls for a life sentence at

7   any criminal history level.  The fact that the terrorism

8   enhancement places defendant in the most serious criminal

9   history category merely reinforces the fact that the Sentencing

10  Commission sought to ensure life sentences for individuals who

11  commit the types of offenses of which defendant was convicted.

12          Now, the guidelines that I just referred to are not

13  mandatory anymore, they're advisory, and the Court is directed

14  under the sentencing statute, 18 U.S.C. Section 3553(a) to

15  consider the following factors in imposing sentence.  Number

16  one, the nature and circumstances of the offense and the

17  history and characteristics of the defendant; number two, the

18  need for the sentence imposed to reflect the seriousness of the

19  offense, to promote respect for the law and to provide just

20  punishment for the offense, to afford adequate deterrence to

21  criminal conduct, to protect the public from further crimes of

22  the defendant, and to provide the defendant with needed

23  educational or vocational training, medical care or other

24  correctional treatment in the most effective manner.

25          The third factor is the kind of sentences

2/16/2012 Sentencing Hearing

  1    available, the fourth is the sentencing guidelines applicable

  2    to the defense, and the fifth is the need to avoid unwarranted

  3    sentencing disparities among defendants with similar records

  4    who have been found guilty of similar conduct.

  5             So, first, the nature and circumstances of the

  6    offense and the history and characteristics of the defendant.

  7    I think it needs to be emphasized, and we have certainly heard

  8    some moving testimony this afternoon from several of the people

  9    on board that plane that this was an act of terrorism that

 10    cannot be quibbled with.

 11             Terrorism has been defined a lot of ways but some

 12    of the most salient definitions, it seems to me, is terrorism

 13    is the premeditated, deliberate, systematic murder, mayhem and

 14    threatening of the innocent to create fear and intimidation in

 15    order to gain a political or tactical advantage, usually to

 16    influence an audience.  We certainly have that in this case, as

 17    we heard from those who were on board the plane, and our own

 18    experience of the last 12 years since September 11 confirms

 19    that definition for all of us.

 20             The UN General Assembly Resolution of 1994 states

 21    as follows with respect to terrorism:  "Criminal acts intended

 22    or calculated to provoke a state of terror in the general

 23    public, a group of persons or particular persons for political

 24    purposes are in any circumstance unjustifiable, whatever the

 25    considerations of a political, philosophical, ideological,

2/16/2012 Sentencing Hearing

 1   racial, ethnic, religious or any other nature that may be

 2   invoked to justify them."

 3          And finally, the United States definition of

 4   terrorism under the federal criminal code is, "Activities that

 5   involve violent or life-threatening acts that are a violation

 6   of the criminal laws of the United States or any state and

 7   appear to be intended to intimidate or coerce a civilian

 8   population, to influence the policy of a government by

 9   intimidation or coercion, or to affect the conduct of a

10   government by mass destruction, assassination or kidnapping,

11   and occur primarily within the territorial jurisdiction of the

12   United States."

13          Anyone who has sat through any of the proceedings

14   in this case knows that the direction that Mr. Abdulmutallab

15   was given was that he should wait to detonate his bomb until he

16   was over the United States, and by his own statements in the

17   past and certainly here today this act was undertaken to

18   achieve a political and religious objective.

19          So the nature and circumstances of the offense are

20   not in dispute.  Defendant attempted to blow up an airplane

21   with 289 people on board and he failed to accomplish this

22   objective only because of a technical problem with his bomb.

23   Defendant, by his own statements, was deeply committed to his

24   mission, seeking out and finding al Qaeda and Anwar Al-Awlaki,

25   volunteering for a martyrdom mission and then becoming involved

Case No. 1:17-cv-02493-RM-KMT  Document 79-2  filed 05/11/18  USDC Colorado  pg 16 of 22
2:10-cr-20005-NGE-DAS  Doc # 139  Filed 04/11/12  Pg 52 of 58  Pg ID 1256  52
2/16/2012 Sentencing Hearing

1    in planning and training for a significant amount of time.

2               When he entered his plea of guilty in this case,

3    and again today, defendant stated that he believes that, "The

4    Koran obliges every able Muslim to participate in jihad and

5    fight in the way of Allah those who fight you, and kill them

6    wherever you find them, some parts of the Koran say, an eye for

7    an eye, a tooth for a tooth."

8               Defendant added that participation in jihad against

9    the United States is considered among the most virtuous deeds

10   in Islam and is highly encouraged in the Koran.  In explaining

11   his offense, defendant stated that, "I attempted to use an

12   explosive device which in the U.S. law is a weapon of mass

13   destruction which I call a blessed weapon."

14              Defendant has never expressed doubt or regret or

15   remorse about his mission.  To the contrary, he sees that

16   mission as divinely inspired and a continuing obligation.

17              Second factor is the need for the sentence to

18   reflect the seriousness of the offense, to promote respect for

19   the law and to provide just punishment for the offense.

20              And I think I commented sufficiently, perhaps, on

21   the seriousness of the offense and the need to promote respect

22   for the law, but I want to comment a little bit on "to provide

23   just punishment for the offense."  No charge in this case was a

24   capital offense.  The defendant does not face the death

25   penalty, he faces life in prison without parole.

Case No. 1:17-cv-02493-RM-KMT   Document 79-2   filed 05/11/18   USDC Colorado   pg 17 of
22
2:10-cr-20005-NGE-DAS   Doc # 139   Filed 04/11/12   Pg 53 of 58   Pg ID 1257          53
2/16/2012 Sentencing Hearing

1          I want to read just a few sentences from an article

2     that recently appeared in the New Yorker by a reporter named

3     Adam Gopnik:

4          "A prison is a trap for catching time.  We hear a

5     fair amount about the inner life of the American prison, but

6     the catch is that American prison life is mostly undramatic.

7     The reported stories fail to grab us because, for the most

8     part, nothing happens.  One day in the life of a prisoner

9     serving a lengthy sentence is all we need to know about that

10    prisoner because the idea that anyone could live for a minute

11    in such circumstances seems impossible.  One day in the life of

12    an American prison means much less because the force of it is

13    that one day typically stretches out for decades.  It isn't the

14    horror of the time at hand but the unimaginable sameness of the

15    time ahead that makes prisons unendurable for their inmates.

16    The basic reality of American prisons is not that of the lock

17    and key, but that of the lock and clock.

18          "That's why no one who has been inside a prison, if

19    only for a day, can ever forget the feeling.  Time stops.  A

20    note of attenuated panic, of watchful paranoia, anxiety, and

21    boredom and fear mixed into a kind of enveloping fog.

22          "As a smart man once wrote after being locked up,

23    the thing about jail is that there are bars on the windows and

24    they won't let you out.  This simple truth governs all the

25    others.  What prisoners try to convey to the free is how the

Case No. 1:17-cv-02493-RM-KMT   Document 79-2   filed 05/11/18   USDC Colorado   pg 18 of 22
2:10-cr-20005-NGE-DAS   Doc # 139   Filed 04/11/12   Pg 54 of 58   Pg ID 1258      54
2/16/2012 Sentencing Hearing

1    presence of time as something being done to you instead of

2    something you do things with alters the mind at every moment.

3    Time becomes, in every sense, this thing you serve."

4              Mr. Abdulmutallab is 23, 24 years old now.  He has

5    only that to look forward to as life in prison, and it seems to

6    me that that is just punishment for what he has done.

7              The third factor is the need to protect the public

8    from further crimes of the defendant.  I believe that the

9    defendant poses a significant, ongoing threat to the safety of

10   American citizens everywhere.  I already recited some of the

11   things that he said when he pled guilty.  He stated that it is

12   his religious belief that the Koran obliges every able Muslim

13   to participate in jihad and fight in the way of Allah those who

14   fight you, and kill them wherever you find them, and that

15   participation in jihad against the United States is considered

16   among the most virtuous of deeds in Islam and is highly

17   encouraged in the Koran.

18             Thus, by his own words, defendant has shown that he

19   continues to desire to harm the United States and its citizens,

20   and that he views it as his religious obligation to do so.

21             I believe that defendant has stated and it is clear

22   that he has enormous motivation to carry out another terrorist

23   attack but that he lacks the capability of doing that because

24   of his incarceration.  This Court has no ability to control the

25   defendant's motivation, which does appear to be unchanged.

2/16/2012 Sentencing Hearing

1   However, I can control defendant's opportunity to act on those

2   intentions.

3              The fourth factor is the need to provide defendant

4   with educational or vocational training and medical treatment.

5   I don't think any of those factors is applicable to this case,

6   and I think that the recitation of the factors that I've

7   already referred to probably adequately covers the statute.

8              I will acknowledge what Ms. Corken said, that the

9   maximum sentence has been imposed in other similar cases such

10  as the Richard Reid case.

11             So with all of that in mind, I sentence the

12  defendant as follows.

13             On Counts 1 through 8 of the first superseding

14  indictment, pursuant to the Sentencing Reform Act of 1984, the

15  Court, having considered the sentencing guidelines and factors

16  contained in 18 U.S.C. Section 3553(a) hereby commits the

17  defendant, Umar Farouk Abdulmutallab, to the custody of the

18  Bureau of Prisons for a term of 240 months on Counts 3, 5, and

19  8, to be served concurrently, and life on Count 7, to run

20  concurrent to the other three counts; to life on Count 1 to run

21  consecutive to all other counts; to 30 years on Count 2 to run

22  consecutive to all other counts; to life on Count 4 to run

23  consecutive to all other counts, and life on Count 6, to run

24  consecutive to all other counts.

25             And in case that isn't clear, that is the maximum

Case No. 1:17-cv-02493-RM-KMT   Document 79-2   filed 05/11/18   USDC Colorado   pg 20 of 22
2:10-cr-20005-NGE-DAS   Doc # 139   Filed 04/11/12   Pg 56 of 58   Pg ID 1260          56
2/16/2012 Sentencing Hearing

1   penalty that is permitted on each of the eight counts of the

2   indictment.

3          An $800 special assessment is ordered due

4   forthwith.  I incorporate in this sentence the order of

5   restitution that I indicated earlier.  The total amount of

6   restitution ordered in this case which will appear in the

7   judgment and commitment order is $2,105 to the, I think it's

8   nine persons who made such a claim.  That is Dior Adel, $400;

9   Jenny Adel, $400; Robert Digennaro, $88; Michelle

10  Dillemuth, $400; Anne Fernandez, $252; Geoffrey Howard, $165;

11  Annmarie Kamper $400, and Kris Lizaso, $400.  Interest is

12  waived on the restitution amounts.

13         The Court waives the imposition of a fine, the cost

14  of incarceration and the cost of supervision due to the

15  defendant's inability to pay.  Upon release from imprisonment,

16  which will never occur, but just for the record, defendant

17  shall be placed on supervised release for a period of life on

18  each count to run concurrent.

19         The mandatory drug testing condition is suspended

20  based on the Court's determination that the defendant poses a

21  low risk of future substance abuse.  If he ever is on

22  supervision, defendant shall abide by the standard conditions

23  adopted by the United States District Court for the Eastern

24  District of Michigan.

25         Mr. Abdulmutallab, I believe that you have the

1    right to appeal your sentence.  If you wish to appeal your

2    sentence, that needs to be done within ten days.

3              Are there any objections to the sentence just

4    pronounced that have not previously been raised?

5              MR. CHAMBERS:  No, Your Honor.

6              MR. TUKEL:  No, Your Honor.

7              THE COURT:  All right.  This hearing is concluded.

8              THE DEFENDANT:  Allahu Akbar.

9              THE CLERK:  All rise.  Court is in recess.

10             THE DEFENDANT:  Allahu Akbar.

11             (Proceedings concluded 3:05 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case No. 1:17-cv-02493-RM-KMT   Document 79-2   filed 05/11/18   USDC Colorado   pg 22 of
22
2:10-cr-20005-NGE-DAS   Doc # 139   Filed 04/11/12   Pg 58 of 58   Pg ID 1262      58
2/16/2012 Sentencing Hearing

1

2                          -    -    -

3                **C E R T I F I C A T I O N**

4          I, Suzanne Jacques, official court

5          reporter for the United States District

6          Court, Eastern District of Michigan,

7          Southern Division, appointed pursuant to

8          the provisions of Title 28, United States

9          Code, Section 753, do hereby certify that

10         the foregoing is a correct transcript of

11         the proceedings in the above-entitled

12         cause on the date hereinbefore set forth.

13         I do further certify that the foregoing

14         transcript has been prepared by me or

15         under my direction.

16    s/ Suzanne Jacques_____           2/15/12
      Suzanne Jacques                      Date
17     Official Court Reporter

18

19

20

21

22

23

24

25

                USA -v- Abdulmutallab   Case No. 10-CR-20005