

**Office of the Attorney General**
Washington, D. C. 20530

March 19, 2012

LIMITED OFFICIAL USE

MEMORANDUM FOR CHARLES E. SAMUELS, JR.
DIRECTOR
FEDERAL BUREAU OF PRISONS

FROM:         THE ATTORNEY GENERAL

SUBJECT:     Origination of Special Administrative Measures Pursuant to 28 C.F.R. § 501.3 for Federal Bureau of Prisons Inmate Umar Farouk Abdulmutallab

On October 12, 2011, Federal Bureau of Prisons (BOP) inmate Umar Farouk Abdulmutallab pleaded guilty to one count of conspiracy to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b(a)(1) and (2), one count of attempted murder, in violation of 18 U.S.C. § 1113, one count of willfully placing a destructive device in proximity to a civil aircraft, in violation of 18 U.S.C. § 32(a)(2), one count of attempted use of a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2), one count of willfully attempting to destroy and wreck a civil aircraft, in violation of 18 U.S.C. § 32(a)(1) and (8), and three counts of possessing or using a destructive device in furtherance of or during a crime of violence, in violation of 18 U.S.C. § 924(c), all in connection with the attempted Christmas Day bombing of a passenger airplane bound for Detroit in December 2009. As detailed in the attached request from the United States Attorney's Office for the Eastern District of Michigan (USAO/EDMI), Abdulmutallab has been in custody since his arrest on or about December 25, 2009. On February 16, 2012, Abdulmutallab was sentenced to life in prison without the possibility of parole. He is currently housed with the BOP in the Special Housing Unit at FCC Florence. It is anticipated that he will be transferred to ADX Florence in the near future.

Abdulmutallab, a twenty-five-year old man from a wealthy Nigerian family, became interested in the online teachings of Anwar al-Awlaki (a United States-born radical imam affiliated with al Qaeda) while studying at University College in London, where he earned an engineering degree in 2008. In the summer of 2009, he traveled to Yemen, made contact with Awlaki, stayed in his home, and received training at an al Qaeda camp in Yemen. Abdulmutallab made clear to Awlaki his willingness to conduct a martyrdom operation or any other terrorist act that he might be asked to undertake.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**　　　　　　　　　　　　　Page 2
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

At Awlaki's request, Abdulmutallab agreed to carry out a martyrdom mission by bombing an aircraft over the United States. He was subsequently trained in the operation of a bomb built into a pair of underwear. On December 6, 2009, Abdulmutallab was given that bomb. In a portion of a martyrdom video that he recorded prior to departing Yemen for his suicide mission and subsequently released by al Qaeda, Abdulmutallab, who is praised in the video as a hero, exhorts "Muslim brothers in the Arabian Peninsula" to "answer the call of Jihad, because the enemy is in your land, along with their Jewish and Christian armies."

After leaving Yemen, Abdulmutallab traveled to Ghana, where he purchased a nonstop round-trip ticket from Amsterdam to Detroit on Northwest-Delta Flight 253 for December 25, 2009. On December 24, 2009, Abdulmutallab traveled from Ghana to Nigeria, and then to Amsterdam. At the airport in Amsterdam, he was able to clear airport security and permitted to board the Detroit-bound plane. As the aircraft began its descent into Detroit, Abdulmutallab detonated the bomb, which did not function as intended. Passengers and flight attendants were able to put out the fire with extinguishers and subdue Abdulmutallab.

After the plane landed, Customs and Border Protection officers took Abdulmutallab into custody. At the time of his arrest, he told the officers that he was acting on behalf of al Qaeda and had intended to "bring the plane down" over the United States. Later, at the hospital where he received medical care for his burns, he provided the Federal Bureau of Investigation (FBI) with extensive details about the explosive device, the bombmaker, and how and when he had been radicalized. When asked if he still had an obligation to commit jihad in light of the fact that his martyrdom mission had failed, Abdulmutallab replied that the obligation to jihad still existed.

On December 15, 2010, Abdulmutallab was charged with eight counts of terrorism-related offenses, as set forth above. On October 12, 2011, he entered a plea of guilty to all counts without the benefit of a plea agreement. On February 16, 2012, he was sentenced to life in prison without the possibility of parole. He showed no remorse at either court hearing.

Based on the information set forth above, the USAO/EDMI believes that imposition of Special Administrative Measures (SAM) is appropriate and that there is evidence of a substantial risk that Abdulmutallab's communications or contacts could result in death or serious bodily injury to others. As described in the attached request, Abdulmutallab attempted to destroy a passenger plane and its passengers in flight, an action for which he has yet to show any remorse. He remains a committed terrorist who continues to harbor the desire to harm the United States. If his communications and contacts with others are not appropriately restricted, there is a substantial risk that he will make every effort to radicalize others, including fellow inmates who may be released from prison at a later time. In addition, it is apparent that Abdulmutallab remains loyal to al Qaeda. There is a substantial risk that, given the opportunity, he will

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                    Page 3
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

communicate with al Qaeda members and seek to facilitate additional terrorist acts. The FBI concurs in this request.

    Based upon information provided to me of Abdulmutallab's proclivity for violence, I find that there is substantial risk that his communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons. Therefore, I am requesting that you, pursuant to 28 C.F.R. § 501.3, implement SAM to restrict Abdulmutallab's access to the mail, the media, the telephone, and visitors. Implementation of the SAM will commence immediately upon notice to the inmate, and the SAM will be in effect for one year from the date of my approval, subject to my further direction.

1. **General Provisions:**

    a.  **Adherence to Usual United States Marshals Service (USMS), BOP, and Detention Facility (DF) Policy Requirements** - In addition to the below-listed SAM, the inmate must comply with all usual BOP[1] policies regarding restrictions, activities, privileges, communications, etc. If there is a conflict between BOP policies and the SAM, as set forth herein, where the SAM is more restrictive than usual BOP policies, then the SAM shall control. If usual BOP policies are more restrictive than the SAM, then BOP policies shall control.

    b.  **Interim SAM Modification Authority** - During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify the inmate's SAM as long as any SAM modification authorized by OEO:

        i.  Does not create a more restrictive SAM;

        ii.  Is not in conflict with the request of the USAO/EDMI, FBI, or BOP, or applicable regulations; and

        iii.  Is not objected to by the USAO/EDMI, FBI, or BOP.

---

[1] While Abdulmutallab is currently in the BOP's custody, in the event of a transfer to any other BOP/USMS facility or other DF, any provisions of the SAM referencing the BOP will apply equally to those entities.

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**  Page 4
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

    c.    **Inmate Communications Prohibitions** - The inmate is limited, within the BOP's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written, or recorded communications) with any other inmate, visitor, attorney, or anyone else, except as outlined and allowed by this document, that could reasonably foreseeably result in the inmate communicating (sending or receiving) information that could circumvent the SAM's intent of significantly limiting the inmate's ability to communicate (send or receive) threatening or other terrorism-related information.

    d.    **Use of Interpreters/Translators by BOP** - Interpreter/Translator ("Interpreter") approval requirement:

        i.    The BOP may use Department of Justice (DOJ) approved interpreters as necessary for the purpose of facilitating communication with the inmate.

        ii.    No person shall act as an interpreter without prior written clearance/approval from the BOP, which shall only be granted after consultation with the FBI and USAO/EDMI.

        iii.    Interpreters utilized by the BOP shall not be allowed to engage in, or overhear, unmonitored conversations with the inmate. Interpreters shall not be alone with the inmate, either in a room or on a telephone or other communications medium.

2.    **Attorney-Client Provisions:**

    a.    **Attorney[2] Affirmation of Receipt of the SAM Restrictions Document** - The inmate's attorney (or counsel) – individually by each if more than one – must sign an affirmation acknowledging receipt of the SAM restrictions document. By signing the affirmation, the attorney acknowledges his/her awareness and understanding of the SAM provisions and his/her agreement to abide by these provisions, particularly those that relate to contact between the inmate and his

---

[2] The term "attorney" refers to the inmate's attorney of record, who has been verified and documented by the USAO/EDMI, and who has received and acknowledged receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one attorney where the inmate is represented by two or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his/her individual capacity.

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**          Page 5
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

         attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, the inmate's attorney and precleared[3] staff members acknowledge the restriction that they will not forward third-party messages to or from the inmate.

         i.     The USAO/EDMI shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to the inmate's attorney.

         ii.     After initiation of the SAM and prior to the inmate's attorney being permitted to have attorney-client privileged contact with the inmate, the inmate's attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USAO/EDMI.

         iii.    The USAO/EDMI shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C., and the BOP.

   b.    **Attorney Use of Interpreters -**

         i.     Necessity Requirement - No interpreter shall be utilized unless absolutely necessary where the inmate does not speak a common language with the attorney. Any interpreter shall be precleared.[4]

---

[3] "Precleared," when used with regard to an attorney's staff, or "precleared staff member," refers to a co-counsel, paralegal, or investigator who is actively assisting the inmate's attorney with the inmate's post-sentencing proceedings, who has submitted to a background check by the FBI and USAO/EDMI, who has successfully been cleared by the FBI and USAO/EDMI, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his/her signature – to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one staff member, and the provisions of this document shall be fully applicable to each such staff member in his/her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

[4] "Precleared," when used with regard to an interpreter, refers to an interpreter who is actively assisting the inmate's attorney with the inmate's post-sentencing proceedings, who has

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**  Page 6
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

    ii. Attorney Immediate Presence Requirement - Any use of an interpreter by the attorney shall be in the physical and immediate presence of the attorney, in the same room. The attorney shall not patch through telephone calls, or any other communications, to or from the inmate.

    iii. Translation of Inmate's Correspondence - An attorney of record may only allow a federally approved translator to translate the inmate's correspondence as necessary for attorney-client privileged communication.

c. **Attorney-Client Privileged Visits** - Attorney-client privileged visits may be contact or non-contact, at the discretion of the BOP.

d. **Attorney May Disseminate Inmate Conversations** - The inmate's attorney may disseminate the contents of the inmate's communication to third parties for the sole purpose of providing necessary legal services related to the inmate's post-sentencing proceedings – and not for any other reason – on the understanding that any such dissemination shall be made solely by the inmate's attorney, and not by the attorney's staff.

e. **Unaccompanied Attorney's Precleared Paralegal(s) May Meet With Client** - The inmate's attorney's precleared paralegal(s) may meet with the inmate without the need for the inmate's attorney to be present. An investigator or interpreter/translator may not meet alone with the inmate. These meetings may be contact or non-contact, at the discretion of the BOP.

f. **Simultaneous Multiple Legal Visitors** - The inmate may have multiple legal visitors provided that at least one of the multiple legal visitors is the inmate's attorney or precleared paralegal. These meetings may be contact or non-contact, at the discretion of the BOP.

g. **Legally Privileged Telephone Calls** - The following rules refer to all legally privileged telephone calls or communications:

---

submitted to a background check by the FBI and USAO/EDMI, who has successfully been cleared by the FBI and USAO/EDMI, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his/her signature – to adhere to the SAM restrictions and requirements.

SPECIAL ADMINISTRATIVE MEASURES (SAM) Page 7
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

i. Inmate's Attorney's Precleared Staff May Participate in Inmate Telephone Calls - The inmate's attorney's precleared staff are permitted to communicate directly with the inmate by telephone, provided that the inmate's attorney is physically present and participating in the legal call as well.

ii. Inmate's Initiation of Legally Privileged Telephone Calls - Inmate-initiated telephone communications with his attorney or precleared staff are to be placed by a BOP staff member and the telephone handed to the inmate only after the BOP staff member confirms that the person on the other end of the line is the inmate's attorney. This privilege is contingent upon the following additional restrictions:

(1) The inmate's attorney will not allow any non-precleared person to communicate with the inmate, or to take part in and/or listen to or overhear any communications with the inmate.

(2) The inmate's attorney must instruct his/her staff that:

(a) The inmate's attorney and precleared staff are the only persons allowed to engage in communications with the inmate.

(b) The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send the inmate's communications to third parties.

(3) No telephone call/communication, or portion thereof, except as specifically authorized by this document:

(a) Is to be overheard by a third party.[5]

(b) Will be patched through, or in any manner forwarded or transmitted to a third party.

---

[5] For purposes of the SAM, "third party" does not include officials of the BOP, FBI, DOJ, or other duly authorized federal authorities when acting in connection with their official duties. This section does not allow monitoring of attorney-client privileged communications.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**  Page 8
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

    (c) Shall be divulged in any manner to a third party, except as otherwise provided in Section 2.d. above.

    (d) Shall be in any manner recorded or preserved.[6] The inmate's attorney may make written notes of attorney/client-privileged communications.

  (4) If the BOP, FBI or USAO/EDMI determines that the inmate has used or is using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, the inmate's ability to contact his attorney by telephone may be suspended or eliminated.

h. **Documents Provided by Attorney to Inmate** - During a visit, the inmate's attorney may provide the inmate with, or review with the inmate, documents related to his post-sentencing proceedings and/or material prepared by the inmate's attorney related to such proceedings, so long as any of the foregoing documents are translated, if translation is necessary, by a precleared translator. Any documents not related to the inmate's post-sentencing proceedings must be sent to the inmate via general correspondence and will be subject to the mail provisions of subparagraphs 2.i. and 3.g. Documents previously reviewed and cleared for receipt by the inmate, and already in the inmate's possession at the outset of the visit, may be discussed or reviewed by the inmate and the inmate's attorney during the visit.

  i. None of the materials provided may include inflammatory materials, materials inciting violence or military training materials, or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USAO/EDMI and FBI.

  ii. The USAO/EDMI may authorize additional documents to be presented to the inmate. If any document not listed or described above needs to be transmitted to the inmate, consent for the transmission of the document may be obtained from the USAO/EDMI without the need to formally seek approval for an amendment to the SAM.

---

[6] Except by the BOP, FBI, DOJ or other duly authorized federal authorities. This section does not allow monitoring of attorney-client privileged communications.

i. **Legal Mail**[7] - The inmate's attorney may not send, communicate, distribute, or divulge the inmate's mail, or any portion of its contents (legal or otherwise), to third parties.

In signing the SAM acknowledgment document, the inmate's attorney and precleared staff will acknowledge the restriction that only inmate case-related documents will be presented to the inmate, and that neither the attorney nor his/her staff will forward third-party mail to or from the inmate.

3. **<u>Inmate's Non-legal Contacts:</u>**

a. **Non-legally Privileged Telephone Contacts -**

i. The inmate is limited to non-legally privileged telephone calls with his immediate family members.[8]

ii. The quantity and duration of the inmate's non-legally privileged telephone calls with his immediate family members shall be set by the BOP, with a minimum of one call per month.

b. **Rules for Telephone Calls** - For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

i. Is to be overheard by a third party.

ii. Is to be patched through, or in any manner forwarded or transmitted, to a third party.

iii. Shall be divulged in any manner to a third party.

---

[7] "Legal mail" is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney. All other mail, including that otherwise defined by the BOP as Special Mail, shall be processed as "non-legal mail."

[8] The inmate's "immediate family members" are defined as the inmate's (BOP- or FBI-verifiable) spouse, children, parents, and siblings. Requests for additional non-legal contacts may be submitted and will be considered on a case-by-case basis.

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                Page 10
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

      iv.    Shall be in any manner recorded or preserved.[9]

    All telephone calls shall be in English unless a fluent FBI- or BOP-approved interpreter is available to contemporaneously monitor the telephone call. Arranging for an interpreter may require at least fourteen (14) days' advance notice.

  c.    **Telephone SAM Restriction Notifications** - For all non-legally privileged telephone calls to the inmate's immediate family member(s):

      i.    The BOP shall inform the inmate of the telephone SAM restrictions prior to each telephone call.

      ii.    The BOP shall verbally inform the inmate's immediate family member(s) on the opposite end of the inmate's telephone communication of the SAM restrictions. The BOP is only required to notify the inmate's communication recipient in English.

      iii.    The BOP shall document each such telephone notification.

  d.    **Family Call Monitoring** - All calls with the inmate's immediate family member(s) shall be:

      i.    Contemporaneously monitored by the FBI.

      ii.    Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

      iii.    A copy of each inmate/immediate family member telephone call recording shall be provided by the BOP on a single, individual cassette tape or compact disk (per call) for forwarding to the FBI. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

---

[9] Except by the BOP, FBI, DOJ, or other duly authorized federal authorities.

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**          Page 11
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

    e.      **Improper Communications** - If telephone call monitoring or analysis reveals that any call or portion of a call involving the inmate contains any indication of a discussion of illegal activity, the soliciting of or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the inmate shall not be permitted any further calls to his immediate family members for a period of time to be determined by the BOP. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

    f.      **Non-legal Visits -**

        i.      **Limited Visitors** - The inmate shall be permitted to visit only with his immediate family members. The visitor's identity and family member relationship to the inmate will be confirmed by the BOP and FBI in advance.

        ii.      **English Requirement** - All communications during non-legal inmate visits will be in English unless a fluent FBI- or BOP-approved interpreter is readily available to contemporaneously monitor the communication/visit.

        iii.      **Visit Criteria** - All non-legal visits shall be:

            (1)      Contemporaneously monitored by the BOP and/or FBI in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

            (2)      Permitted only with a minimum of fourteen (14) calendar days' advance written notice to the BOP facility where the inmate is housed.

            (3)      Without any physical contact. All such meetings shall be non-contact to protect against harm to visitors or staff.

            (4)      Limited to one adult visitor at a time. However, the FBI-verified children of the inmate may visit with a pre-approved adult visitor.

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                  Page 12
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

g. **Non-legal Mail** - Non-legal mail is any mail not clearly and properly addressed to/from the inmate's attorney and marked "Legal Mail" (incoming or outgoing). Non-legal mail is limited to only the inmate's immediate family, U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, BOP, or other federal law enforcement entities.

    i. **General correspondence with limitations:** Correspondence is restricted to immediate family members. The volume and frequency of outgoing general correspondence with immediate family members may be limited to three pieces of paper (not larger than 8½" x 11"), double-sided, once per calendar week to a single recipient, at the discretion of the BOP. The identity and family member relationship to the inmate will be confirmed by the BOP and FBI.

    ii. **General correspondence without limitations:** There is no volume or frequency limitation on correspondence to/from U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, BOP, and other federal law enforcement entities, unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing to protect the security, good order, or discipline of the institution, the public, or national security may be jeopardized.

    iii. All non-legal mail shall be:

        (1) **Copied** - Shall be copied (including the surface of the envelope) by the warden, or his/her designee, of the facility in which the inmate is housed.

        (2) **Forwarded** - Shall be forwarded, in copy form, to the location designated by the FBI.

        (3) **Analyzed** - After government analysis and approval, if appropriate, the inmate's incoming/outgoing non-legal mail shall be forwarded to the BOP for delivery to the inmate (incoming), or directly to the addressee (outgoing).

SPECIAL ADMINISTRATIVE MEASURES (SAM)　　　　　　　　　　Page 13
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

  iv. The federal government shall forward the inmate's non-legal mail to the BOP for delivery to the inmate or directly to the addressee after a review and analysis period of:

    (1) A reasonable time not to exceed fourteen (14) business days for mail that is written entirely in the English language.

    (2) A reasonable time not to exceed sixty (60) business days for any mail that includes writing in any language other than English, to allow for translation.

    (3) A reasonable time not to exceed sixty (60) business days for any mail where the federal government has reasonable suspicion to believe that a code was used, to allow for decoding.

  v. **Mail Seizure** - If outgoing/incoming mail is determined by the BOP or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient, but referred to the FBI for appropriate action. The inmate shall be notified in writing of the seizure of any mail.

4. **Communication With News Media:**

The inmate shall not be permitted to speak, meet, correspond, or otherwise communicate with any member or representative of the news media, in person, by telephone, by furnishing a recorded message, through the mail, his attorney, a third party, or otherwise.

5. **Religious Visitation:**

  a. The inmate shall not be allowed to engage in group prayer with other inmates.

  b. If an FBI- and/or BOP-approved religious representative is to be present for prayer with the inmate, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the BOP.

6. **No Communal Cells and No Communication Between Cells:**

   a. The inmate shall not be allowed to share a cell with another inmate.

   b. The inmate shall be limited within the BOP's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates.

7. **Cellblock Procedures:**

   a. The inmate shall be kept separated from other inmates as much as possible while in the cellblock area.

   b. The inmate shall be limited, within the BOP's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

8. **Commissary Privileges:**

   The BOP shall restrict access to commissary items or any other objects determined by the BOP to be capable of being converted into dangerous instruments.

9. **Access to Mass Communications:**

   To prevent the inmate from receiving and acting upon critically timed information or information coded in a potentially undetectable manner, the inmate's access to materials of mass communication is restricted as follows:

   a. **Publications/Newspapers -**

      i. The inmate may have access to publications determined not to facilitate criminal activity or be detrimental to: national security; the security, good order, or discipline of the institution; or the protection of the public. This determination is to be made by the BOP, in consultation with the USAO/EDMI.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                Page 15
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

    ii.    Sections of the publication/newspaper that offer a forum for information to be passed by unknown and/or unverified individuals, including, but not limited to, classified advertisements and letters to the editor, should be removed from the publications/newspapers prior to distribution to the inmate.

    iii.    If restricted by BOP rules, access to a publication shall be denied. If acceptable, upon delivery, the BOP will review the publication and make the initial determination. If the FBI's expertise on national security or intelligence matters is required, the publication will be forwarded to the FBI for review. The BOP shall also forward the publication to the FBI if translations are needed to make that determination. (In these cases, the FBI shall respond to the BOP within fourteen (14) business days.) The inmate shall then have access to the remaining portions of the publications/newspapers deemed acceptable, in accordance with BOP policy.

    iv.    In order to avoid passing messages/information from inmate to inmate, the inmate shall be allowed to share institutionally purchased publications/newspapers with other SAM inmates only after each publication/newspaper is physically screened by staff to ensure that messages cannot be passed between the SAM inmates. Publications/newspapers individually purchased by the inmate may not be shared with any other inmate.

    b.    **Television and Radio** - The inmate is authorized to have television and radio viewing and listening privileges, in accordance with standard and applicable BOP policies and procedures.

    c.    **Termination or Limitation** - If the BOP determines that mass communications are being used as a vehicle to send messages to the inmate relating to the furtherance of terrorist or criminal activities, the inmate's access may be limited or terminated for a period of time to be determined by the BOP.

10.    **Access to Books:**

The inmate may have access to all books that do not facilitate criminal activity or present a substantial threat to national security or the security, discipline, or good order of the institution. This initial determination is to be made by the BOP and, if the BOP

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**  Page 16
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

determines that the FBI's expertise on national security or intelligence matters is required, the book(s) will be forwarded to the FBI for review. In conducting its analysis, the FBI will determine whether the book advocates or promotes acts of terrorism or violence and/or whether access to the book by this particular inmate would pose a substantial threat to national security.

In order to avoid passing messages/information from inmate to inmate, the inmate shall be allowed to share institutionally purchased books with other SAM inmates only after each book is physically screened by staff to ensure that messages cannot be passed between the SAM inmates. Books individually purchased by the inmate may not be shared with any other inmate.

11. **Transfer of Custody:**

    In the event that the inmate is transferred to or from the custody of the USMS, BOP, or any other DF, the SAM provisions authorized for this inmate shall continue in effect, without need for any additional DOJ authorization.

12. **Inmate's Consular Contacts:**

    The inmate, who is a citizen of a foreign country, shall be allowed Consular communications and visits, consistent with BOP policy. The Consular contacts shall comply with the U.S. Department of State (DOS) Consular notification and access requirements.[10] Prior to permitting any Consular contact, the FBI will verify the Consular representative's credentials with the DOS.

**CONCLUSION**

The SAM set forth herein, especially as they relate to attorney-client privileged communications and family contact, are reasonably necessary to prevent the inmate from committing, soliciting, or conspiring to commit additional criminal activity. Moreover, these measures are the least restrictive that can be tolerated in light of the ability of this inmate to aid,

---

[10] *See* Consular Notification and Access, Instructions for Federal, State, and Local Law Enforcement and Other Officials Regarding Foreign Nationals in the United States and the Rights of Consular Officials to Assist Them, DOS. The DOS contact is the Consular Notification and Outreach Division, Office of Policy Coordination and Public Affairs, DOS, telephone (202) 647-4110 or http://www.travel.state.gov/law/consular/consular_753.html.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)** Page 17
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

knowingly or inadvertently, in plans that create a substantial risk that the inmate's communications or contacts with persons could result in death or serious bodily injury to persons.

With respect to telephone privileges, the SAM are reasonably necessary because of the high probability of calls to co-conspirators to arrange terrorist or criminal activities.

With respect to mail privileges, the SAM are reasonably necessary to prevent the inmate from receiving or passing along critically-timed messages. Although I recognize that eliminating the inmate's mail privileges entirely may be an excessive measure except in the most egregious of circumstances, I believe that delaying mail delivery and allowing authorized personnel to examine a copy of the mail is sufficient at this time to adequately ensure that the mail is not used to deliver requests for, or to assist in, violent and/or terrorist activities. Under these procedures, the inmate can relate personal news to family members, even if delayed, but he may find it difficult or unwise to pass along restricted information.

To the extent that the use of an interpreter is necessary, the government has the right to ensure that the interpreter given access to the inmate is worthy of trust.

The SAM's prohibition of contact with the media is reasonably necessary. Communication with the media could pose a substantial risk to public safety if the inmate advocates violent and/or terrorist offenses, or if he makes statements designed to incite such acts. Based upon the inmate's past behavior, I believe that it would be unwise to wait until after the inmate solicits or attempts to arrange a violent or terrorist act to justify such media restrictions.

The SAM's limitations on access to newspapers, publications, television, and radio are reasonably necessary to prevent the inmate from receiving and acting upon critically timed messages. Such messages may be placed in advertisements or communicated through other means, such as the television and/or radio. Although I recognize that eliminating the inmate's access to such media may be an excessive measure except in the most egregious of circumstances, I believe that limiting and/or delaying such access may interrupt communication patterns the inmate may develop with the outside world, and ensure that the media is not used to communicate information that furthers terrorist, violent and/or criminal activities.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                Page 18
Pursuant to 28 C.F.R. § 501.3
Inmate - Abdulmutallab

## SAM CONTACT INFORMATION

Any questions that you or your staff may have about this memorandum or the SAM directed herein should be directed to the Office of Enforcement Operations, Criminal Division, U.S. Department of Justice, 1301 New York Avenue, N.W., JCK Building, Room 1200, Washington, D.C. 20530-0001; telephone (202) 514-6809; and facsimile (202) 616-8256.