IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17–cv–02493–RM–KMT

UMAR FAROUK ABDULMUTALLAB,

    Plaintiff,

v.

JEFFERSON SESSIONS, Attorney General of the United States, in his official capacity,
FEDERAL BUREAU OF PRISONS,
JOHN DOES 1 THROUGH 20, in their official capacities,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on the defendants' "Motion for Partial Summary Judgment" (Doc .No. 80 [Mot.], filed May 11, 2018. Plaintiff filed his response on July 30, 3018 (Doc. No. 115 [Resp.]), and Defendants filed their reply on August 13, 2018 (Doc. No. 116 [Reply]).

## BACKGROUND

Plaintiff is an inmate housed at the United States Penitentiary–Administrative Maximum ("ADX") in Florence, Colorado. (Doc. No. 76 [Am. Compl.], filed April 14, 2018, ¶ 4.) Plaintiff is serving four terms of life imprisonment plus 50 years for his convictions for the attempted use of a weapon of mass destruction on a commercial airliner that landed in Detroit Michigan, and the attempted murder of the 289 people on board. (*Id.*, ¶1.) ADX is the highest

security prison operated by the Federal Bureau of Prisons ("BOP"). (*Id.*) Before transferring Plaintiff to long-term solitary confinement at ADX, the United States government placed Plaintiff under Special Administrative Measures ("SAMs"). (*Id.*, ¶ 7.) Plaintiff filed his Amended Complaint alleging various claims related to his transfer to ADX, the SAMs, the BOP's actions related to hunger strikes in 2012 and 2014, and his conditions of confinement at ADX. (*See*, *generally*, Am. Compl.)

Defendants move for summary judgment with respect to Plaintiff's Claims 1, 6, 8–10, and 12, as well as with respect to portions of Claims 2–5, 7, 11, 13, 14 and the allegations in paragraph 147 of the Amended Complaint. (*See* Mot.)

## UNDISPUTED MATERIAL FACTS

In accordance with Judge Moore's Practice Standards, the parties have submitted their Statement of Undisputed Material Facts and Response to Statement of Undisputed Material Facts in Exhibit 1. The court addresses the facts as it addresses each argument, *infra*.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts

showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

Defendants move for summary judgment on Plaintiff's claims for failure to exhaust his administrative remedies under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Booth v. Churner*, 532 U.S. 731, 731–32 (2001) (PLRA requires exhaustion in all matters regardless of remedy sought and availability of remedy at the agency level).

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). *See also Jones v. Bock*, 549 U.S. at 210–212 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules,—rules that are defined not by the PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218 (internal quotation marks and citation omitted). Thus, it is the prison's own grievance procedures that set forth what the prisoner must do to exhaust his or her administrative remedies. 549 U.S. at 218 (citation omitted). After *Jones v. Bock*, a failure to exhaust administrative remedies constitutes an affirmative defense which must proved by defendants. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

The BOP provides a four-tiered Administrative Remedy Program for inmate grievances.[1] 28 C.F.R. § 542.13(a). The first step requires a prisoner to present an issue of concern informally to prison staff. 28 C.F.R. § 542.13(a). The prisoner has 20 days from the date of the incident to complete the informal resolution and file a formal Administrative Remedy Request, known as a BP-9.3 28 C.F.R. § 542.14(a). The warden must respond within 20 days. If dissatisfied with the warden's response, the prisoner may appeal to the Regional Director by filing a Regional Office Administrative Remedy Appeal, also known as a BP-10 request, within 20 days. 28 C.F.R. § 542.15(a). The Regional Director must respond to the BP-10 within 30 days. 28 C.F.R. § 542.18. Finally, if the prisoner is dissatisfied with the Regional Director's response, he may appeal to the Director of National Inmate Appeals by filing a Central Office Administrative Remedy Appeal, known as a BP-11, within 30 days. 28 C.F.R. § 542.15(a). The Director of the Central Office Administrative Remedy Appeal must respond within 40 days. 28 C.F.R. § 542.18. A prisoner has not exhausted his administrative remedies until he has properly and timely sought review at all three formal levels. 28 C.F.R. § 542.15(b)(2).

### A. *Claims 1 and 9 and Paragraph 147*

In Claim 1, Plaintiff alleges that his due process rights were violated in his transfer to the ADX in 2012. (Compl. at 63–64.) In Claim 9, Plaintiff alleges that his rights under the Religious Freedom Restoration Act ("RFRA") were violated because he was allegedly denied access to an imam, denied a halal diet, and force-fed a non-halal nutritional supplement. (*Id.* at 72–73.) In paragraph 147 of his Amended Complaint, Plaintiff alleges that, whether due to

---

[1] The BOP grievance procedures applicable to this case are described in the Declaration of Belinda Shelton, a Paralegal Specialist at the United States Department of Justice. (Mot., Ex. 2 [Shelton Decl.].)

SAMs or other factors, the BOP restricted his access to certain books, identifying two books that he claims were never delivered to him. (*Id.*, ¶ 147.)

Defendants provide evidence that Plaintiff failed to exhaust his administrative remedies regarding Claims 1 and 9 and paragraph 147. (Shelton Decl., ¶¶ 3, 12, 16, 20 & Attach. 3.) Plaintiff does not dispute this evidence.[2] (*See* Resp., Ex. 1, ¶¶ 4, 10, 24.) Accordingly, Defendants should be granted summary judgment on Plaintiff's Claims 1 and 9 and paragraph 147 of the Amended Complaint.

### B. *Claim 6*

In Claim 6, Plaintiff alleges that following his hunger strikes in August 2012 and October 2012, the BOP retaliated against him by confining him in a Special Housing Unit in Range 13. (Compl., ¶¶ 222, 232, 317–26.) Defendants submit evidence that the only remedy request Plaintiff filed related to his 2012 hunger strikes complained that he was segregated from his legal materials, medical items, and regular institutional supplies. (Shelton Decl.,¶ 4 & Attach. 5.) Defendants argue that, not only is this remedy substantially different from the claim Plaintiff presents in his Amended Complaint, Plaintiff never exhausted this remedy because after Plaintiff received a response from the Warden on November 2, 2012, he did not file an appeal at the regional or central office levels. (Mot. at 4; Shelton Decl., ¶ 14 & Attach. 5.)

In his response, Plaintiff identifies three remedy requests to demonstrate exhaustion of this claim. (Resp. at 6–7, Ex. 6–8.) Plaintiff filed Administrative Remedy 778479 on April 8, 2014. (*Id.*, Ex. 6.) However, the Administrative Remedy concerns allegations from January 27,

---

[2] Plaintiff offers to voluntarily dismiss Claims 1 and 9 (Resp. at 2, n.1); however, he has not filed a motion or stipulation to dismiss the claims.

2014, and not any hunger strikes in 2012. (Resp., Ex. 6.) The Administrative Remedy does not mention the Special Housing Units or Range 13. (*Id.*)

Plaintiff filed Administrative Remedy 874164 on August 22, 2015. (Resp., Ex. 8.) This Administrative Remedy concerns a request to be allowed to hunger strike in the future without being force-fed and contains no allegations of retaliation, let alone about placement in any special housing unit. (*Id.*)

In Plaintiff's Administrative Remedy 861387, Plaintiff requested at the institution level (BP-9) only that the SAMs be removed. (Resp., Ex. 7 at 6.) At the regional level (BP-10), the grievance states, "SAM not removed: Request SAM . . . removed." (*Id.* at 4.) Then, at the national level (BP-11), Plaintiff complained, "SAM violates 1st, 5th, 8th, 14th Amendments and should be removed." (*Id.* at 2.) Plaintiff then provided a list of complaints. However, Plaintiff does not complaint of retaliation, even in his BP-10. (*See id.*) The national response recognized that Plaintiff requested that his SAM be removed. (*Id.* at 1.)

Plaintiff's general complaints of the denial of rights are not sufficient to exhaust Plaintiff's retaliation allegations. *Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006) (holding that a grievance must give sufficient detail and notice to provide officials with "a fair opportunity to consider the grievance" and enable them to "tak[e] appropriate measures to resolve the complaint internally"); *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) (a grievance should allow "prisons to address specific complaints internally to obviate the need for litigation . . . and creat[e] a useful administrative record"), *overruled on other grounds Jones*, 549 U.S. 199. Moreover, pursuant to 28 C.F.R. § 542.15(b)(2), "[a]n inmate may not raise in an Appeal issues not raised in the lower level filings." Plaintiff did not raise any issues

concerning retaliation in his initial request or at the regional level, and thus he could not raise the issue at the national level.

Defendants should be granted summary judgment on Plaintiff's Claim 6.

### C. Claim 8

In Claim 8, Plaintiff alleges that the BOP's policies prohibiting congregational prayer within H-Unit violate RFRA because Plaintiff believes he is religiously obligated to perform group prayer five times daily and participate in Jum'ah services. (Compl., ¶¶ 334–42.) Plaintiff filed an administrative remedy in which he requested to pray in congregation five times per day. (Mot., Shelton Decl., ¶ 515 & Attach. 6.) Plaintiff received a response from the Warden on December 3, 2015, but he did not file an appeal at the regional or central office levels. (*Id.*)

Plaintiff again argues that he exhausted this claim based on Administrative Remedy 861387. (Resp. at 8, Ex. 7.) However, as discussed *supra*, Plaintiff's failure to raise concerns regarding this claim at the initial and regional level prohibited him from raising the issue at the national level. 28 C.F.R. § 542.15(b)(2). Additionally, Plaintiff's general complaint, even at the national level, is insufficient to exhaust his administrative remedies. *Kikumura*, 461 F.3d at 1283.

Defendants should be granted summary judgment on Plaintiff's Claim 8.

### D. Claims 2, 3, 4, and 5

In Claims 2 through 5, Plaintiff contends that his SAMs violate his First Amendment rights to free speech, free association, and familial association and his Fifth Amendment right to substantive due process. (Compl., ¶¶ 289–316.) Defendants argue that, to the extent Plaintiff

8

asserts claims regarding communication with his thirteen nieces and nephews, he has failed to exhaust his administrative remedies. (Mot. at 6–7.)

In the Warden's response to Plaintiff's Administrative Remedy requesting approval for all of Plaintiff's family members to write, visit, and telephone Plaintiff (Mot., Shelton Decl., ¶ 13, Attach. 4 at 6), Plaintiff was advised that if he wanted to add any additional approved contacts, he would need to make a request with full contact information for each individual that he wished to be added to his approved contact list (*id.* at 5). Plaintiff made several administrative remedy requests to add additional family contacts, including, for example, two of his sisters. (*Id.*, Attach. 5.) Plaintiff, however, never filed any administrative remedies regarding communications with his thirteen nieces and nephews. (*Id.*, Attach. 3.)

Plaintiff does not dispute that he was specifically told by the BOP that if he wanted to communicate with any additional individuals, including any additional family members, he would need to make a request with contact information for each individual that he wished to communicate. (*See* Resp., Ex. 1, ¶¶ 16–17.) Nevertheless, Plaintiff contends this narrower claim is exhausted because he once requested contact with "all other family members." (*Id.*, ¶ 19.) Defendants argue that because the government does not know the names or contact information for all the individuals Plaintiff considers to be his "family" it does not have the information it needs to provide a response. (Reply at 11.) It is undisputed that Plaintiff did not comply with the BOP's request to provide the full name and contact information for his 13 nieces and

9

nephews. (*See* Resp., Ex. 1, ¶ 19.) He thus may not bring this narrower claim as part of his overall challenge to his SAMs.[3]

Defendants should be granted summary judgment on Plaintiff's Claims 2 through 5 regarding communication with his thirteen nieces and nephews.

### E. *Claims 7, 11, and 13*

In Claims 7, 11, and 13, Plaintiff alleges that force-feeding him while on a hunger strike violates his Fifth Amendment right to refuse medical treatment (Compl., ¶¶ 327–33); violates his sincerely held religious rights (*id.*, ¶¶ 359–68), and violates his Eighth Amendment right to be free of excessive force (*id.*, ¶¶ 377–83). Defendants do not contest that Plaintiff has exhausted his overall facial challenge to the BOP's force-feeding regulations. (Mot. at 7.) However, they argue that, to the extent Plaintiff's allegations challenge that he was force-fed in 2012 and 2015 without medical necessity, for purposes of retaliation, and/or without following the BOP's procedures on force-feeding, Plaintiff has failed to exhaust his administrative remedies. (Mot. at 7–8.)

The court first notes that Plaintiff's Claims 7, 11, and 13, on their face, do not allege First Amendment retaliation violations or violations for failure to comply with BOP regulations[4], but rather claims under the Fifth and Eighth Amendments and RFRA. (*See* Compl. at 70, 75, 78.) Moreover, to the extent Plaintiff does assert claims that he was force-fed in 2012 and 2015

---

[3] Plaintiff takes issues with the BOP's rule requiring him to make requests on an individual basis. However, the Supreme Court has held that the agency's rules control. *Woodford*, 548 U.S. at 90 (holding that proper exhaustion demands compliance with agency rules). That Plaintiff does not like this rule is not a reason to excuse his failure to comply with it.

[4] Even if prison officials do not strictly follow the prison's internal regulations, such failure does not constitute a constitutional violation. *See Malik v. Kindt*, No. 95–6057, 1996 WL 41828, at *2 (10th Cir. Feb. 2, 1996) ("a failure to adhere to administrative regulations does not equate to a constitutional violation") (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)).

without medical necessity, for purposes of retaliation, and/or without following the BOP's procedures on force-feeding, Defendants submit evidence that such complaints were never exhausted through any level of the BOP administrative remedy process. (*Id.*, Shelton Decl., ¶ 19 & Attach. 3.)

Under the BOP's regulations, any such allegations needed to have been raised in an administrative remedy filed within 20 calendar days of the force-feeding event giving rise to the grievance. 28 C.F.R. § 542.14. The only remedy request that Plaintiff filed regarding any of the BOP's actions in response to his hunger strikes in 2012 and 2015 complained that he was segregated from his legal materials, medical items, and regular institutional supplies while on a hunger strike. (Mot., Shelton Decl., ¶ 19 & Attach. 3.) Even as to those complaints, Plaintiff never exhausted this remedy after receiving a response from the Warden. (*Id.*)

Plaintiff again identifies the same three remedy requests discussed *supra* to support his argument that he exhausted claims that he was force-fed in 2012 and 2015 without medical necessity, for purposes of retaliation, and/or without following the BOP's procedures on force-feeding. (Resp. at 8–9, Exs. 6, 7, 8.) None of these remedy requests was filed within 20 days of any hunger strike as required by the regulation, 28 C.F.R. § 542.14(a), and none even hint at any allegation that Plaintiff believed he was force-fed without medical necessity or for purposes of retaliation. (*See* Resp., Exs. 6–8.)

Plaintiff argues he is not required to identify every fact related to his claims. (*Id.* at 10–12.) In support of this argument, Plaintiff cites only one case from this Circuit, *Kikumura v. Hurley*, 242 F.3d 950, 956 (10th Cir. 2001), in which the plaintiff claimed that his religious liberties under the First Amendment and RFRA were violated but failed to specifically allege

11

that his religious beliefs included elements of both the Buddhist and Christian religions. *Id.* The Court found Plaintiff was not required to do so to satisfy the exhaustion requirement because the plaintiff's "lengthy written administrative appeals adequately reveal[ed] his claim." *Id.* In *Hurley*, however, Plaintiff asserted religious claims in which only details related to those specific claims were omitted from his administrative appeals. *Id.*

In this case, the three remedy requests provided by Plaintiff to support his argument that he exhausted his administrative remedies are devoid of any mention of being force-fed in 2012 and 2015 without medical necessity, for purposes of retaliation, and/or without following the BOP's procedures on force-feeding (Resp., Exs. 6, 7, 8.), all of which are separate from Plaintiff's facial challenge to the BOP's force-feeding regulations, which the defendants do not challenge for failure to exhaust his administrative remedies. Thus, the remedies failed to "provide[ ] prison officials a fair opportunity to investigate and resolve the complaint[s] internally." *Kikumura*, 461 F.3d at 1284. *See, e.g.*, *Saleh v. Wiley*, No. 09–CV–02563–PAB–KLM, 2012 WL 4356219, at *2 (D. Colo. Sept. 24, 2012), *aff'd*, 588 F. App'x 758 (10th Cir. 2014); *Ross*, 365 F.3d at 1188 (a grievance should allow "prisons to address specific complaints").

Accordingly, the portions of Claims 7, 11, and 13 in which Plaintiff asserts he was force-fed in 2012 and 2015 without medical necessity, for purposes of retaliation, and/or without following the BOP's procedures on force-feeding are not exhausted, and the defendants are entitled to summary judgment on the same.

### F. Claim 14

Plaintiff challenges his overall conditions, claiming that all of his allegations throughout his Amended Complaint combine to constitute an Eighth Amendment violation. To the extent Plaintiff relies on allegations that he did not exhaust, as described *supra*, Plaintiff is barred from relying on such allegations as part of his Claim 14, and the defendants are entitled to summary judgment.[5]

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that Defendants' "Motion for Partial Summary Judgment" (Doc .No. 80) be **GRANTED** and that Defendants be granted summary judgment as to Claims 1, 6, 8, 9, and paragraph 147 of the Amended Complaint; that Defendants be granted summary judgment as to Claims 2 through 5 regarding communication with his thirteen nieces and nephews; that Defendants be granted summary judgment as to Claims 7, 11, and 13 in which Plaintiff asserts he was force-fed in 2012 and 2015 without medical necessity, for purposes of retaliation, and/or without following the BOP's procedures on force-feeding; and that Defendants be granted summary judgment as to Claim 14 to the extent Plaintiff relies on allegations that this court has found to be unexhausted.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.

---

[5] The court will address Defendants' argument that this type of claim is clearly contrary to Supreme Court and Tenth Circuit precedent (Reply at 12) in its Recommendation on the Motion to Dismiss..

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-*

*Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of March, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge