**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 17-cv-02493-RM-KMT

UMAR FAROUK ABDULMUTALLAB,

    Plaintiff,

v.

WILLIAM P. BARR,[1] Attorney General of the United States, in his official capacity,
FEDERAL BUREAU OF PRISONS, and
JOHN DOES 1 THROUGH 20, in their official capacities,

    Defendants.

---

## ORDER ON RECOMMENDATION

---

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") (ECF No. 121) to grant in part and deny in part as moot Defendants' Motion to Dismiss (ECF No. 79). Plaintiff filed an objection (the "Objection") to which Defendants filed a Response (ECF Nos. 129, 131). The matter is ripe for resolution.

## I.   LEGAL STANDARD

### A.  Review of a Magistrate Judge's Recommendations

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district court judge "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." Upon review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*. In the absence of a timely and specific

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Mr. Barr is substituted for former Attorney General Jefferson Sessions.

objection, "the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

### B. Motions to Dismiss

The Magistrate Judge correctly set forth the standards for motions filed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Accordingly, the Court incorporates them by reference.

## II. BACKGROUND

No party has objected to the Magistrate Judge's "Statement of the Case." Upon its review, the Court finds no clear error and accepts the statement. In order to provide context to this Order, the Court nonetheless provides a brief summary of the case.

Plaintiff was convicted for the attempted use of a weapon of mass destruction on a commercial airliner that landed in Detroit, Michigan, and the attempted murder of the 289 people on board. Plaintiff is from Nigeria and a Muslim. The United States government believes that Plaintiff was recruited to commit his crimes of conviction by Anwar Al-Awlaki, who was killed by a United States drone in Yemen.

Plaintiff is housed at the United States Penitentiary–Administrative Maximum ("ADX") in Florence, Colorado, and serving four terms of life imprisonment plus 50 years for his convictions. Prior to Plaintiff's transfer to ADX, in March 2012, the United States government placed Plaintiff under Special Administrative Measures ("SAMs"). The SAMs have been renewed every year, with some modifications.

Plaintiff brought this action asserting the following 14 claims for relief arising from his conditions of confinement at ADX:

Claim 1:      Plaintiff's transfer to ADX in 2012 in deprivation of his liberty without due process in violation of the Fifth Amendment;

Claims 2-4:   The imposition of SAMs which deny free speech, free association, and familial association, in violation of the First Amendment;

Claim 5:      The imposition of SAMs which violate substantive due process under the Fifth Amendment;

Claim 6:      Retaliation against Plaintiff by confining him in Special Housing Unit in Range 13, for engaging in a hunger strike to protest his conditions of confinement in violation of the First Amendment;

Claim 7:      Denial of Plaintiff's right to refuse medical treatment, i.e., the force feeding of nutrients related to his hunger strikes, in violation of the Fifth Amendment;

Claim 8:      Denial of access to group prayer in violation of the Religious Freedom Restoration Act ("RFRA");

Claim 9:      Failure to provide meaningful access to an imam in violation of RFRA;

Claim 10:     Denial of a halal diet in violation of RFRA;

Claim 11:     Responding to hunger striking by force feeding in violation of RFRA;

Claim 12:     Force feeding non-halal nutritional supplement in violation of RFRA;

Claim 13:     Excess force by force feeding in violation of the Eighth Amendment; and

Claim 14:     Cruel and unusual punishment under totality of circumstances in violation of the Eighth Amendment.

(ECF No. 76, Amended Complaint.)

Defendants moved for partial summary judgment as to claims 1, 6, 8-10, and 12; portions of claims 2-5, 7, 11, 13, and 14; and allegations in paragraph 147 of the amended complaint. The Magistrate Judge recommended (the "Amended Recommendation") granting Defendants'

partial summary judgment motion in its entirety, which recommendation the Court adopted. (ECF Nos. 120, 132.)

Defendants also moved to dismiss all claims except claims 8-10.  That Motion to Dismiss is at issue in this Order.  The Magistrate Judge recommended granting in part and denying in part as moot Defendants' Motion to Dismiss as follow: dismissing without prejudice claims 7 and 11-13 under Fed. R. Civ. P. 12(b)(1); dismissing with prejudice claims 2-5 and 14; and denying the Motion to Dismiss as moot as to claims 1 and 6 based on the Amended Recommendation that such claims be dismissed for failure to exhaust administrative remedies.  Plaintiff's Objection followed.

## III.    ANALYSIS

### A.  Matters to which there are no objections

Plaintiff's Objection is stated to be addressed to claims 2-5, 11, 12, and 14.  But, as Defendants argue, the Objection fails to address claim 5 other than referencing it in a title. Accordingly, any objection to the recommendation as to claim 5 is waived or otherwise insufficient.  *See United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (An objection is proper if it is specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).  Accordingly, the Court conducts a clear error review as to the recommended disposition of claims 1, 5, 6, 7, and 13.  Upon such review, the Court finds no clear error and accepts the recommendation (a) to dismiss claims 5 (with prejudice), 7 (without prejudice), and 13 (without prejudice) and (b) to deny Defendants' Motion to Dismiss as moot as to claims 1 and 6.

**B. Matters to which there are objections**

    **1. Claims 2-4[2]**

Plaintiff objects to the recommended dismissal of Claims 2-4 on more than one basis. The Court addresses each in turn.

    *a) Judicial Notice and Matters Referenced in Complaint*

In evaluating the Motion to Dismiss, the Recommendation relied on documents attached to Defendants' papers, including the SAMs imposed upon Plaintiff and the contents of copies of the plea transcript and sentencing transcript in Plaintiff's criminal case. It is well established that when ruling on a Rule 12(b)(6) motion, a court must consider the complaint but may consider other sources such as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)); *see also, e.g., Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 861 F.3d 1081, 1103 (10th Cir. 2017) ("A district court may…consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." (quotations and citation omitted)); *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) (A court may take judicial notice of "another court's publicly filed records concerning matters that bear directly upon the disposition of the case at hand." (quotations and citation omitted)).

Plaintiff argues the Recommendation improperly took judicial notice of such documents to contradict his factual allegations by accepting the truth of the statements within the SAMs and of the statements he made as shown in the plea transcripts and sentencing transcripts which lead to his incarceration at ADX. Defendants respond that a court may take judicial notice of the

---

[2] As stated, Plaintiff includes claim 5 in his title but fails to address claim 5.

contents of court transcripts and other court records and, further, the Recommendation did not rely on the truth of the statements Plaintiff made, e.g., that the "Koran obliges every able Muslim to participate in jihad and fight in the way of Allah, those who fight you, and kill them where you find them." (ECF No. 79-1, 26:2-4.)  Moreover, Defendants argue, the Recommendation did not rely on judicial notice when considering the SAMs.  The Court agrees.

Starting with the SAMs, although the Recommendation stated that judicial notice was taken, that was in fact not what was done.  Instead, the Recommendation considered the SAMs because they are referred to in the complaint, they are central to Plaintiff's claim, and their authenticity is not in dispute.  (*See* ECF No. 121, 2 n.1, 10 n.3.)

As for the Recommendation's reliance on the contents of the transcripts and statements contained in them from Plaintiff's criminal proceedings, the Court agrees the Recommendation could do so, and properly did do.  *See, e.g., Anderson v. Cramlet,* 789 F.2d 840, 845 (10th Cir. 1986) (approving the district court's consideration of a recording and *Dateline* episode in ruling on motion to dismiss).  As the Recommendation indicated, it considered the contents to show that Plaintiff made certain statements, not that such statements were true, and that the government may reasonably rely on them in deciding to implement restrictions.  Accordingly, Plaintiff's objections here are overruled.

### b)  *Deference to the government*

Scattered in the Objection are arguments that the Recommendation's "near-absolute" deference to Defendants based on their assertion of national security concerns is in error.  The Court finds it need not reach the issue of whether a "heightened" or "greater" level of deference beyond "substantial deference" is required in this case.  Here, the Court finds on de novo review that Plaintiff's allegations are insufficient under the "substantial deference" standard he

advocates.[3]  In doing so, the Court recognizes "that concerns of national security and foreign relations do not warrant abdication of the judicial role," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010), and that though the reasonableness standard under *Turner v. Safley*, 482 U.S. 78, 89 (1987) is deferential, it is not "toothless."  *Gee v. Pacheo*, 627 F.3d 1178, 1188-89 (10th Cir. 2010) (quotation and citation omitted).  And, of course, the Court recognizes that its review is under Rule 12(b)(1) and Rule 12(b)(6) and, under the latter Rule, it accepts as true all *well-pleaded factual allegations* in the complaint, views those allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in plaintiff's favor.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).

### c)   *The adequacy of Plaintiff's allegations*

Defendants contend the SAMs are reasonably related to a legitimate penological interest, that of protecting national security.  To withstand a motion to dismiss, a prisoner must plead facts showing the *absence* of a rational connection between the challenged restriction and a legitimate penological interest.  *Al-Owhali v. Holder,* 687 F.3d 1236, 1239 (10th Cir. 2012).  The Recommendation found there was a rational connection between the restrictions imposed and the legitimate penological interest of national security and Plaintiff failed to rebut the stated justifications for the SAMs.  Plaintiff contends, however, that he adequately alleged his SAMs violated his constitutional rights and are not reasonably related to a penological interest.

First, Plaintiff supports his contentions by pointing to allegations that there were changes in the restrictions with his communications, allowing communications with certain unidentified people while incarcerated at Federal Correctional Institution – Milan, Michigan during the pendency of federal criminal case but disallowing such communications with them while

---

[3] The Supreme Court has stated courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Overton v. Bazzette*, 539 U.S. 126, 132 (2003).

incarcerated at ADX after his conviction;[4] and to allegations that he has not received any charges for violence while incarcerated and does not have an ongoing desire to commit jihad.  But the Court finds allegations that there were changes in restrictions in communications allowed does not, without more, show there was no rational connection between such restrictions and the legitimate penological interest of national security, especially where Plaintiff was allegedly advised that changes as to one of his sisters were based on security concerns.  Further, as Defendants argue, that Plaintiff has not committed violence *while in prison* fails to rebut Defendants' national security justification based primarily on Plaintiff's *danger outside of prison*.

As for Plaintiff's allegations that he does not have an "ongoing desire to commit violent jihad" and does not intend to incite violence via communications with individuals outside of prison, as Defendants respond, there are no allegations that such information was conveyed to any government officials for them to consider.[5]  Thus, this too fails to rebut Defendants' stated justifications.

Next, Plaintiff argues that improper deference was afforded, an argument which the Court has already rejected above.

Third, Plaintiff asserts – cursorily – that a detailed, fact-specific analysis of the SAMs should be conducted.  This assertion is so cursory as to be waived.  Even if it was not waived, the Recommendation did so, addressing Plaintiff's allegations concerning the restrictions and why there was a rational connection between his restrictions and Defendants' legitimate penological interest.  Plaintiff provides no specific argument as to how or why this was deficient.

---

[4] Plaintiff did not identify these individuals, other than one of them was one of his sisters.  As to her, Plaintiff alleges the changes in communications were stated to be based on "security concerns."  (ECF No. 76, ¶¶ 11-12.)
[5] In light of this finding, the Court need not consider Defendants' alternate argument that, even if such information was conveyed, they did not have to credit it in their assessment of restrictions.

Finally, Plaintiff contends he distinguished the cases Defendants cited and the Recommendation gave his arguments concerning those cases short shrift.  The Court finds, however, that the Recommendation did not agree with Plaintiff's analysis does not mean there was error.  Moreover, that the cases may not be factually identical to Plaintiff's allegations do not render them inapposite.  For example, the focus is not on whether Plaintiff's crimes of conviction stem from any communications conducted while in prison but whether any communications restriction has a rational relationship to the legitimate penological interest of national security in light the bases for such restriction, e.g., Plaintiff's criminal conviction and his statement that participation in jihad against the United States is highly encouraged in the Koran.  At bottom, the Court is not persuaded that the cases do not support the proposition that Plaintiff has failed to meet his pleading burden.

In summary, the Court agrees with the Recommendation and finds the complaint fails to plead sufficient facts to plausibly infer that the SAMs at issue here were not – or are not – reasonably related to a legitimate penological interest.  The Objection is overruled.

### 2.  Claims 11 and 12

The Magistrate Judge recommended dismissal of these claims 11 and 12 without prejudice based on a lack of standing.[6]  Plaintiff objects by arguing the Recommendation incorrectly concluded he lacked standing and, further, even if Plaintiff was not facing an impending injury of force feeding "that does not foreclose his policy challenge."  According to Plaintiff, the existence of the policy of force feeding "substantially burdens his rights *now* because it forces him to abstain from engaging in his right to hunger strike" for fear of being

---

[6] Except to the extent claim 11 was recommended to be dismissed based on Defendants' motion for partial summary judgment.  (ECF No. 120, pp. 10-13; No. 121, p. 19.)

 Plaintiff's argument about any improper burden shifting is irrelevant because, ultimately, the recommendation on these two claims was based on standing and not on the merits.

forced fed non-halal food.  (ECF No. 129, p. 11 (emphasis in original).)  These arguments are rejected.

Plaintiff's objection as to the finding that he lacks standing is – in a nutshell – nonspecific and conclusory.  Accordingly, this objection is waived and overruled.  *See 2121 East 30th Street*, 73 F.3d at 1060 (A party's objection "must be both timely and specific to preserve an issue for de novo review by the district court.").  The same holds true for Plaintiff's argument based on a new "policy challenge" theory.  As Defendants respond, Plaintiff never presented this legal theory before and may not do so now in an objection to the Recommendation.  *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) (theories raised for the first time in objections to a recommendation are waived); *Duran v. Donaldson*, 663 F. App'x 684, 689 (10th Cir. 2016) (same).  Accordingly, this objection is also overruled.

Even though Plaintiff's objection is overruled, the Court nonetheless declines to accept the recommendation as to claim 12.  Specifically, in the Order on Amended Recommendation, the Court accepted the recommendation to dismiss claim 12 for failure to exhaust administrative remedies.  Thus, whether claim 12 also fails due to lack of standing is moot.  Therefore, Defendants' Motion to Dismiss is denied as moot as to claim 12.

### 3.  Claim 14

The Magistrate Judge recommended dismissal of Plaintiff's claim 14 alleging his combined conditions of confinement – the "totality of circumstances" – constitute cruel and unusual punishment in violation of the Eighth Amendment.  In his complaint, Plaintiff alleged that various "distinct constitutional violations have a mutually reinforcing effect of depriving [him] of social interaction – a basic human need."  (ECF No. 76, ¶ 393.)  In his objection, Plaintiff asserts he has sufficiently demonstrated his conditions deprive him of "several basic

human needs" "including social interaction, medical care, well-being, and basic safety" and the cases the Recommendation relies on are distinguishable. And, according to Plaintiff, all of his alleged deprivations combined results in deprivation of his "basic human needs for physical and psychological well-being" sufficient to plausibly allege a claim under the Eighth Amendment. The Court finds otherwise.

In *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), the Supreme Court observed that conditions of confinement, "alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities." By this statement, the Supreme Court meant "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (emphasis in original). "To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes." *Id.* at 305. And, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305. Thus, to state a valid claim, "a plaintiff must allege an unquestioned and serious deprivation of basic human needs…such as food, warmth, or exercise." *Gowadia v. Stearns*, 596 F. App'x 667, 674 (10th Cir. 2014) (quotations and citations omitted).

An examination of Plaintiff's allegations and attendant arguments shows the alleged basic human need(s) of which Plaintiff is allegedly deprived is as amorphous as the "totality of circumstances" upon which he relies. The amended complaint alleges the deprivation of basic human need at issue is social interaction. But, as the Recommendation found, such allegations

are insufficient under *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 755-756 (10th Cir. 2014).[7] As for Plaintiff's argument that his basic human need is "physical and psychological well-being" which has been deprived by the combination of various unrelated allegations, e.g., force feeding and restraints on communications, this too fails the plausibility requirement. First, such combination is improper as the unrelated allegations have no "mutually enforcing effect." Second, general "well-being" is simply not a qualifying basic human need, such as food, warmth, and exercise. *Wilson*, 501 U.S. at 304. *See Gowadia*, 596 F. App'x at 674 (noting that "'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities'" are qualifying needs (citing *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980)); *Cleveland v. Martin*, 590 F. App'x 726, 732 (10th Cir. 2014) ("Visitation with [one's] minor children does not involve one of life's necessities."); *Womble v. Harvanek*, 739 F. App'x 470, 473 (10th Cir. 2017) ("[A]ccess to a sufficient supply of uncontaminated drinking water is a basic human need" which plaintiff plausibly stated with allegations that water fountain and ice machine were broken, there was excessive heat in his cell, he received only six ounces of ice per day, and he couldn't drink the water in his cell because it was contaminated (brown) and made him sick (vomited). (emphasis omitted)).

The Court has considered Plaintiff's remaining arguments but is not persuaded. The Court overrules Plaintiff's objections and accepts the recommendation to dismiss claim 14.

## IV. CONCLUSION

Based on the foregoing, the Court

---

[7] The Court is not persuaded by Plaintiff's argument that *Silverstein* was decided on a motion for summary judgment and that Silverstein's claim withstood a motion to dismiss. The order on the motion to dismiss did not discuss whether Silverstein sufficiently alleged a serious deprivation of basic human needs or what such needs were. Instead, the district court relied on the length of Silverstein's solitary confinement – 27 years – to find plausibility. *Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1097-1099 (D. Colo. 2010).

(1) OVERRULES "Plaintiff's Objection to Recommendation of United States Magistrate
Judge (Doc. 121)" (ECF No. 129);

(2) ACCEPTS the Recommendation of United States Magistrate Judge (ECF No. 121) as
stated herein except as to the recommended dismissal of claim 12 based on lack of
standing;

(3) GRANTS in part and DENIES in part as moot Defendants' Motion to Dismiss
Amended Complaint (ECF No. 79) as stated herein;

(4) DISMISSES WITHOUT PREJUDICE the remaining allegations as to claims 7, 11,
and 13;

(5) DISMISSES WITH PREJUDICE the remaining allegations as to claims 2-5, and 14;
and

(6) DIRECTS the Clerk to enter JUDGMENT in favor of Defendants and against
Plaintiff as set forth in this Order on Recommendation and the Order on Amended
Recommendation and to close this case.

DATED this 18th day of September, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge